FILED
2022 Jan-31  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| JOHNNY LANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:20-cv-657-GMB |
| | ) |
| KILOLO KIJAKAZI,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On November 20, 2017, Plaintiff Johnny Lane filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of October 27, 2017. Lane's application for benefits was denied on May 31, 2018. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 23, 2019 and denied Lane's claims on May 20, 2019. Lane requested a review of the ALJ's decision by the Appeals Council, which declined review on March 20, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of May 20, 2019.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Lane's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Under 28 U.S.C § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 15.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in excerpted court decisions.

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255

F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).   There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   Lane bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).   The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?

(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform his former occupation?

(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

Applying the sequential evaluation process, the ALJ found that Lane had not engaged in substantial gainful activity since his alleged onset date of October 27, 2017 through the date of decision, May 20, 2019. R. 19. At step two, the ALJ found that Lane suffered from two severe impairments: sequelae from small bowel obstruction/tumor/surgery and osteoarthritis of the right hip. R. 19. The ALJ also considered Lane's medically determinable impairments of anxiety and depression both individually and in tandem. R. 19. The ALJ determined that both were non-

5

severe impairments because they resulted in no more than minimal limitations to Lane's ability to perform basic work activities. R. 19.

The ALJ considered the four areas of mental functioning known as "paragraph B" criteria in finding that Lane's mental impairments were not severe. R. 20.  The ALJ found that Lane had no limitation in the first functional area of understanding, remembering, and applying information. R. 20.  The ALJ found a mild limitation in the second functional area of interacting with others. R. 20.  The ALJ found a mild limitation in the third functional area of concentrating, persisting, and maintaining pace. R. 20.  And the ALJ found a mild limitation in the fourth functional area of adapting and managing oneself. R. 20.

At step three, the ALJ found that Lane did not have an impairment or combination of impairments meeting or medically equal to the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.  Before proceeding to step four, the ALJ determined that Lane had the Residual Functional Capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) and § 416.967(b) with the additional limitations of occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds. R. 21.  He further limited Lane to the occasional use of his right lower extremity for pushing, pulling, and using foot pedals. R. 21.  And the ALJ determined that Lane must avoid exposure to moving mechanical parts and

unprotected heights. R. 21.  In reaching this opinion, the ALJ explicitly considered

Lane's symptoms, the medical opinions in the record, and prior administrative

medical findings in accordance with 20 C.F.R. § 404.1520c and § 416.920c. R. 21.

The ALJ determined that Lane was not able to perform any past relevant work

(R. 23), but relied on the opinion of a Vocational Expert ("VE") to find that

> considering the claimant's age, education, work experience, and
> residual functional capacity, the claimant is capable of making a
> successful adjustment to other work that exists in significant numbers
> in the national economy.

R. 25.  Thus, at step five of the five-step sequential process, the ALJ found Lane not

to be disabled from October 27, 2017, the alleged onset date, through May 20, 2019,

the date of the decision. R. 25.

### III.  RELEVANT FACTUAL BACKGROUND

Lane was born on August 18, 1970 and was 47 years old on the date of his

hearing. R. 24.  He has a high school education. R. 24.  From 2004 to 2018, Lane

held various jobs involving physical labor. R. 35–46.  He worked in a water

treatment plant (R. 35), loaded furniture onto trucks (R. 36), hauled lumber (R. 38),

and supervised a construction crew. R. 40.  Lane developed problems with his hip,

and in 2015 visited North Bone and Joint Clinic, where he was told he needed a

complete hip replacement. R. 55.  Lane was continuing to work at that time, and he

testified that he "limped, but always fought it." R. 55.  He now uses a cane to walk

7

because of his hip pain. R. 56.  The cane was not prescribed by his doctor. R. 59.

Lane's hip pain causes him to have trouble balancing and to need help putting on his

socks and showering. R. 56.

In October 2017, Lane visited a hospital complaining of stomach pain. R. 47

& 316.  He had small bowel surgery that day and had a tumor removed. R. 47 & 316.

In November 2017, Lane's surgeon, Dr. Cassidy Koonce, noted that Lane was

tolerating a regular diet and having regular bowel movements. R. 398.  In January

2018, Lane returned to the hospital complaining of abdominal pain. R. 406.  This

pain was treated with antibiotics and improved significantly. R. 406.  Lane's medical

records show that he has been doing well with his medications and his physical

examinations have resulted in normal findings. R. 426.

However, Lane continues to complain of abdominal pain.  He testified that he

cannot take care of his family, play with his grandchild, or sleep in a bed. R. 48.  He

complains that he is unable to sit up because of pain at the site of his abdominal

incision. R. 50.   Lane's abdominal CT scans have continued to show normal

findings, as have his physical examinations. R. 465.   In May 2019, Dr. Koonce

reported that Lane was doing well and his medications were helping him. R. 516.

Dr. Koonce noted that Lane has been "treated with several different medications in

[an] attempt to alleviate [his pain] without success." R. 507.  Dr. Koonce suggested

pain management therapy to help Lane with his abdominal pain. R. 526.

Lane also testified that he began experiencing anxiety and depression after his surgery. R. 54.  He is unable to sleep through the night consistently (R. 53) and must take sleep medication. R. 51.  He testified that he cannot concentrate for longer than an hour, but he can follow written and spoken instructions and gets along well with authority figures. R. 253–54.  Lane can brush his hair, feed himself, and use the bathroom by himself, but he needs assistance in dressing and bathing himself. R. 249.  Lane spends his time watching television and reading, in addition to visiting with his family, girlfriend, and members of his church. R. 252.

## IV.  DISCUSSION

Lane argues that the ALJ erred because: (1) the ALJ did not properly evaluate the medical opinion evidence or properly determine Lane's physical RFC, (2) the ALJ incorrectly found that Lane has no severe mental impairments, and (3) the ALJ did not properly evaluate Lane's subjective pain complaints. Doc. 16 at 2.  The court addresses each of these arguments below.

### A.      Medical Opinion Evidence

Lane argues that the ALJ did not evaluate Dr. Koonce's opinions by considering the factors set out in 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2), resulting in an improper RFC determination. Doc. 16 at 2.  Specifically, Lane argues that the ALJ did not specifically mention any evidence cited by Dr. Koonce in assessing her opinions or comprehensively evaluate the medical evidence in the

record.[3]   Doc. 16 at 6–8.   The Commissioner argues that the ALJ had substantial

evidence to support the finding that Dr. Koonce's opinions were not persuasive.

Doc. 18 at 14.  The court agrees with the Commissioner.

On January 18, 2017, the Social Security Administration published final rules

titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed.

Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting

the final rules published at 82 Reg. 5844).  Because these final rules were effective

as of March 27, 2017 and Lane applied for benefits after that date, the new rules

apply to his claim.  Under 20 C.F.R. § 404.1520c(a), the ALJ need not give deference

or any specific evidentiary weight to medical opinions, including those from the

claimant's treating physicians. *See Thomason v. Soc. Sec. Admin., Comm'r*, 2021

WL 4061423, at *7 (N.D. Ala. Sept. 7, 2021) (making note of the regulatory change

and affirmative disclaimer of a formal physician hierarchy).

In reviewing a doctor's opinion, the ALJ may consider (1) supportability,

(2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other

factors. 20 C.F.R. § 404.1520c(c).  The most important factors are supportability and

consistency. 20 C.F.R. § 404.1520c(b)(2).  While the ALJ must explain how he

---

[3] Lane's brief relies heavily on decisions rendered under the old scheme mandating deference to the opinions of treating physicians. *See, e.g.*, Doc. 16 at 8 (citing *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986)).

considered supportability and consistency in his decision, he need not explain how he considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).  And the ALJ is not required to articulate how he considers each medical opinion or prior administrative medical finding; the application of the factors to the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1).

The court finds that the ALJ had substantial evidence to find Dr. Koonce's medical opinions unpersuasive. *See Thomason*, 2021 WL 4061423 at *7 (finding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court").  Although Dr. Koonce's physical medical source statement noted that Lane suffered from chronic abdominal pain such that he was not capable of regular and continuous work (R. 507–10), this conclusion has limited probative value because it is not supported by Dr. Koonce's own records. *See Simon v. Kijakazi*, 2021 WL 4237618, *5–7 (M.D. Fla. Sept. 17, 2021) (affirming the ALJ's finding that a medical opinion was unpersuasive because it was inconsistent with the doctor's own treatment records and was not supported by the medical record); *Miller v. Kijakazi*, 2021 WL 4190632, *7 (N.D. Ala. Sept. 14, 2021) (affirming the ALJ's finding that the opinion of plaintiff's treating psychiatrist was unpersuasive because it was inconsistent with and unsupported by the medical record).  For example, on May 29, 2018, Dr. Koonce noted that Lane was doing well, having normal bowel movements, and was no longer feeling nauseous or vomiting. R. 516.  Dr. Koonce

also noted that Lane had a normal gait and range of motion. R. 517.  Additionally, on February 26, 2019, Dr. Koonce noted that Lane's surgical wound was well healed and there was no hernia. R. 526.  And Dr. Koonce's medical records from May 29, 2018 noted that medication helped Lane's abdominal pain. R. 516.  Moreover, the claim that Lane continues to experience pain at the site of his incision is inconsistent with the medical record, which reflects a well-healed surgical incision. R. 50, 59–60, 420–22, 426–27, 431–36, 525–26.  Therefore, there is substantial evidence that Dr. Koonce's physical limitation opinion was inconsistent with the medical record. *Simon*, 2021 WL 4237618 at *5–7, *Miller*, 2021 WL 4190632 at *7.

Furthermore, the court rejects Lane's argument that the ALJ's treatment of Dr. Koonce's medical opinion resulted in an improper RFC determination. Doc. 16 at 7–8.  The objective medical record shows that Lane has a normal gait, range of motion, and his abdomen has healed from the surgery incision. R. 435, 465, 517, 520, 523, 526.  Lane's daily activities show that he is able to care for himself with some assistance and can engage in limited activities. R. 249, 252–53.  Therefore, the medical record contains substantial evidence supporting the ALJ's light duty RFC determination. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021) (holding that "the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence") (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004)).

Because Dr. Koonce's medical opinions were not supported by or consistent with other objective medical evidence in the record, including his own treatment records, the ALJ did not err in finding his opinion unpersuasive. Therefore, the ALJ had substantial evidence to support Lane's light duty RFC determination.

## B.    Mental Impairments

Lane argues that substantial evidence does not support the ALJ's finding that his mental impairments of anxiety and depression were non-severe. Doc. 16 at 9–10.  Lane also argues that the ALJ erred in deciding not to order a psychiatric consultative examination to determine the impact of his mental impairments on his ability to work. Doc. 16 at 12.  The Commissioner argues that the ALJ had substantial evidence and, even if the ALJ erred, the error is harmless because the ALJ found another severe impairment at step two of his evaluation. Doc. 18 at 16–19.  For the following reasons, the court affirms the ALJ's findings.

First, the Commissioner is correct that any potential error at this stage would be harmless because the ALJ ultimately found in Lane's favor in his step two analysis. *See Hearn v Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) ("Any error at step two was harmless because the ALJ found in Hearn's favor as to impairment, and the ALJ properly noted that he considered Hearn's impairments in the later steps.").  The ALJ determined that Lane's anxiety and depression were non-severe, but he also determined that Lane had two severe

13

impairments and considered all of Lane's impairments in combination in later steps.
R. 19–25. Therefore, if the ALJ did err in his finding that Lane's anxiety and
depression were non-severe, that error is harmless. *Hamilton v. Colvin*, 2016 WL
613888, *9 (N.D. Ala. Feb. 16, 2016) (citing *Maziarz v. Sec'y of Health & Human
Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("In other words, the ALJ's failure to find
a particular impairment severe is not reversible error if the ALJ found other severe
impairments.").

Second, the ALJ did not err in his evaluation of Lane's mental impairments.
Medically determined mental impairments are evaluated using four broad functional
areas known as the "paragraph B" criteria: (1) the claimant's ability to understand,
remember, or apply information; (2) interact with others; (3) concentrate, persist, or
maintain pace; and (4) adapt or manage himself. 20 C.F.R. § 404, Subpart P,
Appendix 1, 12.00(A)(2)(b). These four areas are assessed on a scale ranging from
no limitation to extreme limitation. 20 C.F.R. § 404, Subpart P, Appendix 1,
12.00(F)(2)(a)–(e). The limitation designations are determined on a case-by-case
basis based on evidence of a claimant's clinical and laboratory findings, effects of
symptoms, effects of chronic mental disorders, effects of structured settings, effects
of medications, and other information. 20 C.F.R. § 404.1520a(c).

Before turning to each of the four broad categories and the question of
substantial evidence, the court rejects Lane's argument that the ALJ erred in failing

14

to order a psychiatric consultative examination. The ALJ does not have an obligation to order a consultative examination where the record includes sufficient medical and non-medical evidence. 20 C.F.R. § 404, Subpart P, Appendix 1, 12.00(F)(3)(a), *see also West v. Barnhart*, 300 F. Supp. 2d 1264, 1271–72 ("[A] consultative examination is only required, however, when information is not in the record."). In this case, there is ample medical and non-medical evidence on the issue of Lane's anxiety and depression. Lane testified about the effects of his anxiety and depression (R. 54), his experience is documented in his function report (R. 251–54), and his medical treatment reports address his anxiety and depression (R. 538–73). Therefore, the ALJ did not err by choosing not to order a psychiatric consultative examination.

### a.    *Understanding, Remembering, and Applying Information*

Substantial evidence supports the ALJ's determination that Lane had no limitations in understanding, remembering, or applying information. Lane exhibited his ability to understand and remember information during the hearing with the ALJ. For example, when asked about his work history from 2004 to 2017, Lane could recall the details of his work and describe it to the ALJ. R. 35–45. Lane's hobbies indicate that he can understand, remember, or apply information since he enjoys reading as often as he can. R. 252. Lane confirmed that he can follow written and spoken instructions (R. 253), and Lane's more recent medical reports indicate that

he can understand the medical treatments prescribed by his doctors and comply with their instructions. R. 556.  Therefore, there was substantial evidence supporting the ALJ's finding that Lane had no limitations in this area of functioning. *See Robinson v. Berryhill*, 2019 WL 5212666, at *5 (N.D. Ala. Oct. 16, 2019) (affirming the ALJ's determination that the plaintiff's migraines caused no more than a moderate limitation on understanding, remembering, or applying information based on her daily activities).

### b.    *Interacting with Others*

Substantial evidence supports the ALJ's determination that Lane had a mild limitation in the functional area of interacting with others.  The majority of Lane's hearing testimony and supporting evidence indicates that he appropriately interacts with others.  During the hearing, Lane testified that he lives with his fiancée. R. 48. On his function report, Lane indicated that he often spends his time with other people. R. 252.  Lane frequently goes to church and calls his family members. R. 252.  He stated that he gets along well with authority figures. R. 262.  Moreover, Lane's primary care provider consistently described him as having an "appropriate affect and demeanor." R. 545–73.  On the other hand, there is some evidence in the record that Lane has some limitations in this area.  For instance, Lane reported that he experiences anxiety (R. 54), and his medical treatment records confirm a history of anxiety. R. 539.  The ALJ took this evidence into account and determined that

16

Lane's anxiety did not "cause more than [a] minimal limitation on his ability to perform basic mental work activities." R. 19.  The ALJ did not err in finding that Lane had a mild limitation in this area. *See Woods v. Saul*, 2021 WL 1206607, at *9 (S.D. Ala. Mar. 30, 2021) (affirming the ALJ's finding that, despite plaintiff's low IQ, plaintiff had a mild limitation interacting with others based on the medical reports and his daily activities).

### c.      *Concentrating, Persisting, and Maintaining Pace*

Substantial evidence supports the ALJ's determination that Lane had mild limitations in concentrating, persisting, and maintaining pace. R. 20.  Lane's medical records often indicate unremarkable psychiatric examinations. *See*, *e.g.*, R. 517 & 545.  Although Lane claimed that he does not often finish what he starts, he also admitted that he can pay attention for one hour straight. R. 253.  Lane's hobby of reading evidences some ability to concentrate. R. 252.  Lane also indicated that he could count change, handle a savings account, and use a checkbook. R. 251.  While Lane testified that he does not shop for himself or drive himself, substantial evidence nevertheless supports the ALJ's finding that Lane had only mild limitations in this area. *See Lee v. Astrue*, 2012 WL 4479288, at *8 (N.D. Ala. Sept. 26, 2012) (affirming the ALJ's moderate limitation determination based on the claimant's medical reports indicating a normal affect and demeaner in addition to his daily activities).

### d.     Adapting and Managing Himself

Finally, substantial evidence supports the ALJ's determination that Lane had a mild limitation in adapting and managing himself. R. 20.  Although Lane's fiancée helps with some daily tasks, Lane is capable performing some tasks himself, like managing his own blood sugar at home. R. 54–56.  Lane consistently attended his three-month checkups with his surgeon. R. 516–27.  Lane cannot bathe or dress himself without assistance, does not prepare his own meals, and does not do any house or yard work, but he feeds himself, brushes his own hair, and uses the toilet by himself. R. 249–50.  Therefore, substantial evidence supported the ALJ's finding that Lane had a mild limitation in this area. *See Abrams v. Soc. Sec. Admin. Comm'r*, 2020 WL 5797941, *6–7 (N.D. Ala. Sept. 29, 2020) (affirming the ALJ's finding that the claimant had a mild limitation adapting or managing herself based on evidence in her third-party function report and medical records).

## C.     Subjective Pain Statements

Lane's final argument is that the ALJ's rejection of his pain statements was conclusory and in violation of the pain standard. Doc. 16 at 16–17.  The Commissioner argues that the ALJ articulated specific reasons supporting his rejection of Lane's subjective pain statements.  For the following reasons, the court finds that substantial evidence supports the ALJ's determination and that the ALJ applied the proper standard to reach his conclusion.

18

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. § 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, along with statements by medical or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required to conduct

19

an explicit symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Lane's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22.  The court finds that this determination is supported by substantial evidence.

The ALJ examined the medical evidence and Lane's testimony about his daily life activities.  The ALJ found that his complaints of disabling pain were inconsistent with the following medical evidence:

- October 2017 medical records from Athens-Limestone Hospital showing that Lane was admitted for a small bowel obstruction and underwent small bowel surgery. R. 22 & 316.  Following his surgery, Lane was discharged. R. 398.
- November 2017 medical notes from Dr. Koonce show Lane reported that he had been tolerating a regular diet and having regular bowel movements. R. 22 & 398.  Physical examinations showed some drainage from the incision and a CT scan showed enteric fistula with drainage of oral contrast to the wound. R. 22 & 398.  Lane ultimately required laparotomy without complications. R. 22 & 400.

- December 2017 and January 4, 2018 medical notes from Dr. Koonce show Lane reported that he was doing well and having normal bowel movements and his physical examinations revealed the same. R. 22, 401 & 409–10.
- January 8, 2018 medical notes from Dr. Koonce show Lane complained of abdominal pain. R. 22 & 406. Lane was admitted to the hospital and started antibiotics with significant improvements. Lane's later physical examinations revealed normal findings and Lane reported that he was doing well. R. 22 & 426.
- Treatment notes from July and November 2018 and February 2019 show that Lane continued to report abdominal pain and difficulty bending and reaching. R. 22, 428–505 & 519. X-rays showed normal findings except for mild gaseous distention of the colon and small bowel. R. 431. In April 2018, a CT scan of Lane's abdomen showed normal findings. R. 465. Additionally, Lane's physical examination showed normal findings and he was treated conservatively with pain medications (Norco and Neurontin). R. 22 & 520.
- March 2019 medical notes from Dr. Koonce show Lane reported that he was doing well, and his medication was helping. R. 22 & 516. Physical examination revealed some peri-incisional tenderness but a well healed incision and normal findings otherwise. R. 22 & 517.

As to Lane's hip pain, the ALJ found that the medical records reflect that imaging of his right hip in October 2017 and May 2018 showed severe osteoarthritis. R. 22, 312 & 447. The ALJ further noted Lane's testimony that in the past he was able to work despite his hip pain. R. 22 & 55. Moreover, Lane's physical examinations showed that he had a normal gait and range of motion. R. 23, 435 & 517.

Based on this medical evidence and Lane's testimony about his daily activities, the court finds that the ALJ's conclusion is supported by substantial evidence. Lane's medical examination reports were largely normal, showing that he

healed well from his surgery. His treatment and medications were effective. The treatment notes reflect that Lane was healing normally, was capable of normal bowel movements, and had a normal gait and range of motion. These observations undermine his claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 559, 603 (11th Cir. 2019) (holding that the ALJ properly found a subjective complaint inconsistent with the record of the claimant's daily activities); *Bailey v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints).

In sum, the ALJ correctly considered the consistency of Lane's statements with the evidence and found that the record did not support his "alleged level of incapacity." R. 23; *see also* SSR 16-3p, 2017 WL 5180304, *8 (Oct. 25, 2017). The ALJ's determinations are supported by substantial evidence.

## V. CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgement will be entered separately.

DONE and ORDERED on January 31, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE